by the court. The next case on calendar for argument is Pritchard v. Blue Cross Blue Shield of Illinois. Counsel, can you hear us? Yes, I can, Your Honor. All right, counsel for appellate, please proceed. Thank you, Your Honors. I'm Rob Hogman for Blue Cross Blue Shield of Illinois. A third-party administrator applies a self-funded health plan according to its terms. That's the administrator's job. The terms of the plan are set by the employer. So, if an employer excludes a certain treatment for a certain diagnosis for its plan, the administrator will deny coverage for one reason. The plan says do not pay for it. What are the reasons? Counsel, let's assume what you're basically saying is that even if the employer requires you to do something that is patently illegal, as long as you follow that plan, that's cool. Let's say the plan says you can't serve Asians or black people. Is that okay? Yeah, I think there's a couple of answers to that. First of all, with respect, you can always sue the plan designer. There is, and we'll get into this later on in the argument, where the intentional discrimination requirement of Title IX, which is really what's at issue here, ultimately can be worked with under circumstances where there are very, very clear situations and where I can tell you as Blue Cross Blue Shield of Illinois, for instance, we would never accept such a plan for obvious reasons. There's no basis whatsoever for any possible way to discriminate on the basis like that, and so it would be hard, and I can imagine situations where people would work with counsel and through the litigation process to figure out what role the TPA had in that kind of situation, but none of that is present here. That's not how this case came forward. Well, be sure I understand your point here. It's my understanding from the record that you accepted this assignment, if you will. The law, I think you would agree, is clear that you cannot discriminate against the conduct being sought here without violating the law. Is that correct? Well, we actually have an argument in the back of our brief that says to the contrary. You're talking about reference? No, we're talking about whether this is even discrimination on the basis of sex, because what we do in this case is decide this case is a matter of the diagnosis at issue, the gender dysphoria diagnosis. That issue, of course, is up at the Supreme Court, at least in some degree. I think Justice Gorsuch would probably have a problem with your argument there, but let's deal with that. Well, it's not clear, just to be clear. I mean, I'll jump to that if your honor is interested in that, because on the important point on that is what we do doesn't match the rationale of Bostock at all. We don't do anything based on anybody's gender expression. We don't do anything based on and we don't even know their gender. All we know is the diagnosis, the gender dysphoria and the treatment being offered for it. And we put those together regardless of the kind of situations at issue in employment discriminations, where the discrimination is always on the basis of some kind of gender expression that you wouldn't allow to somebody else. That's just not the case here. That was the basis, by the way, of the L.W. decision in the Sixth Circuit. We'll see what the Supreme Court does in that, but we don't think you ultimately have to go there, because under the regulations at issue and under the statute at issue and under the intentional discrimination standard. And that's where I'd like to go, Judge, if you're OK with that. But if you had a question, do you think that we should defer ruling on this case until we see how the Supreme Court sorts whether or not this is discrimination at all? We certainly don't have any objection to that, Your Honor, Judge Rawlinson. I certainly don't have any problem with that. I do think that our primary arguments having to do with Title IX, the intentional discrimination statute and the fact that we are an ERISA fiduciary basically spending our customers' money on their behalf and following ERISA law according to the way ERISA law expects us to follow it, that all of that can be reached without regard to that discrimination, without regard to that issue being decided by SCRMETI. If you're going to go there, obviously, I think it makes sense to wait there, but that's up to you, of course, Your Honor, in all due respect. But let me jump to the real key issue here. You know, we think our reading of the statute flows naturally from both the statute and the longstanding decisions implementing it. As relevant here, Section 1557 expressly piggybacks on Title IX for claims asserting sex discrimination. And that's the last sentence of Section 1557 itself. The enforcement mechanisms provided for and available under such Title IX in this case apply, shall apply, for purposes of this violation. So what that means, and this Court has said this, Title IX requires intentional discrimination. So does Section 1557 for claims asserting sex discrimination. So what is intentional discrimination? The conduct must be intentional in the sense that it must be more than merely that we were negligent, that somehow we should have known that there was discrimination. And that stems from the fact that Title IX is spending clause legislation, which means that what we must do, which means that it must be clear to us that the defendant is prohibited from doing what he's allowed to do. And that's what they did. Did you raise the spending clause issue below? We did. Well, we raised, we raised the spending clause issue is unpacking the argument having to do with where this case began. You might remember, Judge Smith, the case began and the regulations have sort of shifted back and forth in a variety of ways. And what we're trying to do now, especially in light of Loper Bright, is make clear that you understand that the regulations at issue in the Obama administration, which we think are right on this issue, the 2016 regulations are absolutely right on this issue and what the basis of that is. So you don't have to have raised the, you don't have to have waived the argument to have raised this issue. We're now unpacking it in the way that the law requires. And in that regard, remember that Davis and Gebser, the Title IX cases at issue here, they say the standard has to ensure that the person with substantial control over the act, the act of discriminating, the one with the ability to remedy the allegedly irrelevant intent. So let's look at this case. According to them, according to plaintiffs here, we're, our position is one of facial neutrality. They argued in their own complaint at page, at paragraph four, 1870 of the appendix. We do what the plan sponsor said to do in the plan. That's what they've claimed. And how can following our legal obligations under ERISA be both an intentional act of discrimination over which we had control to prevent? It's neither of those. We cannot control plan design. We can't change the plan design. So under the law for intentional discrimination, counsel, you can decide whether to accept the plan, right? If it's illegal, and we take our example before, say it was a racial discrimination and you knew it was in there and you say, well, we're not doing this plan. That's illegal. We're not going to do that. Why is that not true in this case? Because, because there's so many reasons why in this case, it would be entirely not inconsistent with sex discrimination to allow this. There's RFRA, for one, which under this case, under the CHI plan, that's clearly, that's clearly established. The whole point of this. You're saying RFRA does apply and is private. So let me explain what I Of course. So the employer, it would not be illegal for the employer to, if the employer made the same decision that you made on this claim, it would not be illegal. That's the point. That is 100% the point. Davis and Gebser have said under Title IX, the agent is not responsible for discrimination of the principal at issue in Title IX cases, different in Title VII, Your Honor, and Judge Smith for what it's worth. In Title VII cases, the whole case would come out differently for that reason alone. And please, it's very, very important to remember what we're arguing for here under this provision of the statute. We are arguing only that the right way to do this, the right way to read ERISA, the right way to read 1557, and including to some degree, RFRA as well, because it's relevant as a super statute, is to say, bring the plaintiff, bring the employer who made the design decision into the case. That's the way you get to... I'm still not clear on what your answer to the question that Judge Smith has put several times is. Assuming that someone comes to you with a proposed plan that is clearly discriminatory, such as we will not make any reimbursement to black people, are you claiming that your acceptance of that plan as a Blue Cross plan does not make you liable for discrimination? I think such a person would be in a position where, again, depending on how the discrimination unfolded and how it came about, I think that person would be in line in a certain way. But what you have here, Judge Rakoff... No, no, no. I understand you say this is different, but I just want to make sure. Are you saying that the answer to my question is yes, in that circumstance, Blue Cross would be legally liable? If I can think of absolutely no reason why a person might agree to allow this to exist under any circumstances, and we are far, far from that, but if under any circumstances, it's very hard for me to imagine you wouldn't meet the deliberate indifference standard under certain circumstances. I can't say for sure, but I can say I certainly wouldn't advise my client to go into that situation. But this case... I'm still thinking that what I asked was a yes or no question, and I think that your answer... My answer is yes, if I know nothing else, that person is going to satisfy under the deliberate indifference standard. What's different here, what's very different here is the full range of circumstances available for why it's entirely lawful. And what you're doing is you're flipping. Remember, the intentional discrimination standard is not negligence, which means if the agent is the one who's engaged in discrimination, it's not on us because we should have known. It's not on us that we should have gone forward at that point and inquired into, well, do you have good reasons or bad reasons? Is it because you have religious reasons like CHI? Is it because you have cost-related reasons? Or is it because you have doubt about the ultimate efficacy? There are all sorts of arguments that are made that are perfectly legitimate under sex discrimination standards that would exclude this, and it's not our job as the third-party administrator to be the one to have to do that. And that's what's critically the point. In the case, Judge Rakoff and Judge Smith, that you both put to me, it's very hard to imagine any other basis for not doing that other than what you're imagining. I can't think of one. Counsel, you're obviously a very good lawyer. I would suggest if you ever get tired of it, you ought to go into dancing because you're really good at that. I'm trying very hard to be clear about the roles here, and I see that I do go a little bit further than I should with my hands and the like, but thank you, Your Honor. Let me say, before I leave the remainder of my time for rebuttal, I do want to say something very quick about the funding issue. The fact that Section 1557 doesn't apply to us as a matter of funding, that's yet another reason why it's appropriate to bring the plaintiff in. We've dealt with this in the brief, and I don't want to eat up too much of our time, but basically, unless you think providing health care is the same thing as providing health insurance under the Civil Rights Restoration Act, and there's really no basis to believe that, it's not like insurance is some kind of random, strange thing that anybody would be concerned about without Congress knowing about it. You can't reach that here, and that's really the fundamental point on that. A totally separate reason, by the way, Judge Rawlinson, to answer this question separate and apart from having to wait for Scrimeti to be decided. Unless there are further questions at this time, I'd like to reserve the remainder of my time for rebuttal. Very quickly, what we propose is a straightforward and sensible way to give effect to all the relevant statutory concerns. Deter and remedy intentional discrimination. That's what 1557 is for. Maintain the TPA obligation to apply a plan according to its terms. That's what ERISA is for. And respect religious freedom and plan designers like RFRA, who can then come forward when they're sued and explain themselves. Thank you, Your Honors. Thank you. Counsel? Good morning, Your Honors, and may it please the Court. Omar Gonzalez-Pagan for the Plaintiff's Sunday Class. Your Honors, this is a Section 57 case, and I think the Court's questions are exactly right. ERISA here recognizes that it must be applied and plans should be administered consistent with federal law. And under Section 1557 of the Affordable Care Act, the administration of a plan that contains a categorical exclusion for gender-affirming health care is a form of sex discrimination. Counsel, why didn't you sue the employer who provided the plan? That's the plan of the employer, not the plan of the third-party administrator. So, why didn't you sue the employer who is responsible for the provisions in the plan? Your Honor, two answers to that question. First, it is true that the employer could be also liable under Title VII liability, but note that the CSI plan at issue here, for example, for CP, pertains to a beneficiary, and Title VII only prohibits discrimination on behalf of that individual's sex, that employee's sex, and that would be the parents. So, Title VII, there is case law that wouldn't have extended. But what about under Title IX? Well, Title IX, if the employer is subject to Title IX, not every employer is. And here we have a systemic problem where Blue Cross... For this particular case, would the employer, CHI, would they be liable under Title IX? Under Section 557, we would argue that they could be liable, although they may have defenses... So, why didn't you sue them then? If they could be liable, why wouldn't you sue them? Your Honor, which gets to my second point, that here we are dealing with a systemic problem where Blue Cross is actually administering nearly 400 plans from all kinds of entities that contains these exclusions. And us addressing that in a systemic way is why we filed a case against Blue Cross as a recipient of federal financial funds subject to Section 5057. I will also note that Blue Cross never inquires of any of its employees. So, what is there that would require them to canvas the employers to determine whether or not they're discriminated? Is that part of the obligation under ERISA? It is not, Your Honor. But it is to say that Blue Cross Blue Shield is imagining rationales, hypothetical rationales by employers as to why this is the RIFRA argument, as to why they may adopt an exclusion. There's no admissible evidence that any of the employers has a religious belief that is being burdened. C.H.I. here in particular voluntarily removed this exclusion in 2023. Your Honor, that is at page 71 of the excerpt of record from a declaration from Talisa Drake, which is docket 195. And there's no evidence of any other religious employer customer. And so, let me ask you this, Counsel. You know, you're obviously representing, you hope, a class. And that's where the money is, going against a class. You're dealing with a defendant here that's big, covers a lot of people, whereas if you shoot the individual employer, you kind of screw up the class a little bit, don't you? Is that why you didn't sue the employer? That's one of the reasons. We're trying to address a systemic problem. I will note that there's no monetary incentive. There's no monetary damages that are a remedy that is being asked for on behalf of the class. Well, at this point, but under Rule 23, if you had to join the employer in this case, wouldn't that kind of mess up your class? Your Honor, I don't believe that it necessarily would have messed up the class because the commonality is met. And I will note that there's no appeal as to the class certification at issue here. But commonality will be met because the course of by Blue Cross remains the same. It looks at this very simple question of, is this related to transgender health care or gender dysphoria? And if so, under the exclusions that it administers, 378 of which it actually drafted and provided to the employer, it would then deny coverage on its own letterhead. Let me ask you this. The 2020 rule that you referred to has now been superseded by a 2024 rule. What difference, if any, does that have on the outcome of this case from your perspective? From our perspective, Your Honor, we should just look at the statute. And the statute here is completely clear. We don't need to go into the back and forth tennis match that occurs between administrations. I think Loper Bright in the Supreme Court has made clear that courts have an independent duty to look at the words of the statute in determining the scope of a statute. And here, Section 1557 is very clear. Any health program, any part of which receives federal financial assistance is a covered entity. And Blue Cross here, not only is it part of, is that a health program as understood under the ACA and common sense, frankly, but... Well, counsel, could we explore that a little bit? What is this? Are you saying that the provision of insurance is a health program? I'm saying that health insurance is an integral part to the provision of insurance, Your Honor. Well, that's a different question. It has to be a health program under the statute. So, cite me a case that says that, in the Ninth Circuit, that says that provision of health insurance is a health program. Sure, Your Honor. So, specifically, Smith, decided by this court, spoke of how plan benefits are designed and administered. It's something that is encompassed by Section 1557's affirmative obligation not to discriminate in the provision of health care. And, in fact, in Smith, this court already recognized that insurance is covered under Section 1557. Not only that, but how... But wasn't that based on the regulations, though? No, Your Honor. It looked at the statute as well. And I would also note that the Fourth Circuit's decision in Cato is particularly instructive here, as well as the district court decisions of the cases that went up in Cato, both with regards to the health plan at issue in West Virginia, which was a health plan that only received federal financial assistance as to Medicare, and it still was deemed to be a covered entity, and the same with the health plan in North Carolina. Counsel, the problem with most of those cases is they grapple with regulations as opposed to the statute. I don't believe that's entirely true, Your Honor. Which ones are solely based on the interpretation of the statute and the phrase health program? For example, Your Honor, in T.S. versus Heart of Cardone, the court noted that we don't need to look to the regulations in determining whether all the operations... What circuit is that? Seventh Circuit, Your Honor. Okay. It noted that in determining that all the operations of a covered entity are covered, we don't need to look, for example, to the regulations. We can decide that just on the basis of the statute. And that case said that the provision of insurance is a health program? No, Your Honor. That case more specifically related to whether all the operations of a covered entity were covered. That's the difficulty I'm having trying to find some authority that says the provision of health insurance is a health program because... Your Honor, again, I would point to... Go ahead. Apologies, Your Honor. I would point to Smith as being fairly clear in that regard. But not only that, the tax structure and purpose of the Affordable Care Act is entirely clear here. At the heart of the Affordable Care Act was Congress's desire to ensure equitable health care by eliminating discrimination, not just within the entire health care system, but particularly within insurance. And if one looks at the other provisions of the Affordable Care Act, which we would argue must be read in context and in whole with Section 1557, for example, Section 1553 of the Affordable Care Act, 42 U.S.C. 18113, defines a health care entity to include a physician, a health maintenance organization, a health insurance plan, any other kind of health care facility organization or plan grouping all of these entities together. Similarly, basic health program at Section 1331 of the ACA is defined to include the provision of health plans. And the Public Health Service Act, as amended by the ACA, defines medical care to include, quote, amounts paid for insurance for medical care. So, Your Honor, the context of the entirety of the ACA and the statutory language is clear here. Not only that, but it doesn't the Section 1557 speaks to any health program or activity. It doesn't speak to any health provider or any health or any physician or any doctor, but rather it needs to be related to health care. I believe that a decision by the Third Circuit is particularly instructive here with regards to Title IX on education, when it noted that an education program or activity is not limited solely to educational institutions, but rather any entity that has, as part of its mission or work, an educational component. And that's Doe v. Mercy, Your Honor, is cited within our brief, Mercy Catholic Medical Center. And so, similarly here, a health program or activity is one which is simply health-related. And that is something that health insurance and the administration of health plans clearly is. Counsel, I'll ask you what I ask opposing counsel. Do you think it would be beneficial for us to wait for the Supreme Court to perhaps clarify whether or not discrimination exists in this context? I don't believe so, Your Honor. Obviously, that is up to the court's discretion, and we refer to the court. But I don't believe it appropriate or necessary in this case as to sex discrimination for a few reasons. First, this is a statutory case. And Justice Gorsuch made clear that in Students for Fair Admissions that the statutes are meant to prohibit more clearly conduct that may be justified or can be justified under the Equal Protection Clause. Not only that, but Title VII is clearly the precedent that we look to with regards to interpretation of Title IX and Section 1557. This court has said as much in Doe v. Snyder and in Grabowski. And it is also true that as a statutory provision, right, it is meant to provide broader protections, broader coverage. The constitutional 14th Amendment protections are just the floor, and statutes are meant to encompass more. And here, the ACA has a broad scope and purpose. Lastly, defenses or arguments that may limit the scope of the 14th Amendment are not applicable in the statutory context. For example, geduldek. Geduldek is not applicable in statutory context as rejected by Congress when it rejected both the holding and the reasoning of Gilbert as to Title VII. And this court in Smith actually noted, for example, that hearing loss could be a proxy for disability discrimination under Section 1557. And it's a clear proxy, actually a more close proxy for discrimination based on transgender status. Only transgender people suffer from gender dysphoria. So for all those reasons, Your Honor, I just don't think that LW will be the last word as to whether there is sex discrimination here. In fact, it would likely be inapplicable. Counsel, can I just ask you one other question? Your colleague on the other side made a passing reference, although we didn't really discuss it very much, to RFRA. Is it your position that RFRA does not apply here because it's just between private parties, the government's not involved? Certainly, it is our position, Your Honor. It is, and we agree with the district court in that regard. Not just that, it is the majority view of the circuit courts here. Certainly, this court has observed as much, if not held in Sutton, and it has been the view of both the Sixth, Seventh, and Fourth Circuits, most recently the Fourth and Billard. And so I think that is instructive here. And as to the spending clause question, Your Honor, which I think you had posed as to notice, and there was an allusion to that, there is clear notice here. The terms of the statutes are clear. Blue Cross actually knows that administering and providing these categorical exclusions violates the statute, at least as to insured plans. It is actually on page 1471 of the excerpts of record when it is discussed, its witness discussed how Section 5057 was one of the reasons why they removed these exclusions from their insured plans. And not only that, but the notice is clearly met here, and there's no spending clause issue. I will also add that I believe Judge Rakoff, Your Honor, had decided Cruz v. Zucker almost eight years ago, which provided notice as to the question of whether transgender status discrimination in the form of a categorical exclusion in a plan is a form of sex discrimination, and that was almost eight years ago in SDNY. So, Your Honors, keeping all of that in mind, when Blue Cross Blue Shield denied coverage to plaintiffs and the members of the class for their gender-related healthcare, which it did on its own letterhead, and noting that it did not discriminate on the basis of sex or gender identity in that very denial, it violated its legal obligation, independent legal obligation not to discriminate as a recipient of federal funds under the Affordable Care Act. It did so for its own actions in terms of administration and enforcement of the exclusions. Section 1557 is a statute that governs here, and the textual language of that context and purpose of that statute is clear. The court should not countenance Blue Cross's efforts to just watch out for its bottom line by deferring to the discriminatory preferences of its customers. But rather, it must reaffirm the obligation that Blue Cross has a legal obligation not to discriminate as a condition of its receipt of federal financial funds, and it should watch out for the health and well-being of the very people that the Affordable Care Act seeks to protect. Thank you, Your Honors. Thank you, Counsel. Roberto? Thank you, Your Honors. I'll be very quick, Your Honors. Let me start with the Spending Clause issue. First, no case, Your Honor, Judge Rawlinson says that an insurance is a provider of health care. We all know what provider of health care. I think Mr. Gonzalez-Pagan early on went through a series of federal statutes, including, I mean, just picking one, for instance, 42 U.S.C. Section 18113 as an example, and if you go through and you look at all those statutes, Congress knows exactly how to refer to insurance when it means to refer to insurance. It's not in the Civil Rights Restoration Act. That's the whole point. It can't be the case. Housing is another one of the industries at issue. Can it be the case that providing housing insurance is providing housing? Nobody thinks that, and nobody would read that as a matter of the plain language. So that's one way to resolve this case. The other way to resolve this case is to go back to Title IX again, its intentional discrimination statute, and I think I heard Mr. Gonzalez-Pagan say out loud what I think we know to be true, which is he brought this action against the third-party administrator precisely because he doesn't want to have to go through and figure out whether the principle that we're acting upon has, in fact, violated Section 1557. That might be because there might be perfectly good cost issues or other issues. It might also be, Judge Smith, because there are RFRA issues. Our point on that is not that we are here to assert RFRA issues. We're not asking that. The point is the reason why the Obama administration in 2016 read the regulation the way they did and said you have to sue the discriminator, the plan sponsor, under these circumstances is because that holistically puts it all together. It makes it all work. That's why RFRA is relevant here. It's relevant here because we need something that ensures that the right party is in front of the court who can provide all of the reasons rather than use what is effectively an agency rule where we're being held liable for something the agent, under many circumstances, might literally be allowed to do. Counsel, can I ask you this, particularly in light of what's been bright? Do you agree that all we really ought to be looking at here is 1557, not the 2020 or 2024 rule in terms of our understanding of what law governs here? I think you need to look at 1557. I think you need to look at Title IX because it's obviously incorporated in through 1557, that's Schmidt. And I do think to the extent it's relevant at all, and it's still obviously entitled to skid more deference and all of that, the fact that from 2016 all the way until 2024, the way we understood it matters quite a bit in this context. Consistency is a big part of what matters for Loeb or Bright and whether you defer to regulations. And that consistency counts for something, especially here, again, remember Title IX is spending legislation. So unless what we did is clear that what we did would violate the statute, we can't be held liable for it. And I want to say something else about, I think Mr. Gonzalez-Pagan also referred to the fact that we never inquire about people. And that's in the record, but that's at best, and that's not even a very good argument for, but at best negligence, right? And negligence isn't the statute, isn't the intent requirement here. And it's not because we couldn't inquire, but somebody like CHI comes to us and says, there's a religious basis for it. Are we supposed to investigate the religious sincerity of our customers? That's ridiculous. That's not what the statute was designed to do. And there's one solution to all of this, and it's very simple. Bring the employer into the case. You can deal with problems having to do with systemic problems that way just as well, because you're going to get an authoritative ruling one way or the other. You're going to get a ruling that's going, but you might not get a ruling depending on whether the circumstance is warranted. And that's really the point here. And that's why we think both as a matter of the statute, 1557 Title IX, the regs in addition support that, and common sense all support a rule that says bring the employer into the case. Counsel, opposing counsel relied on our decision in Smith to support his argument. Do you read that case as being, as saying that a third party administrator can be liable under? I didn't either, so I agree with you on that. Unless there are further questions, we respectfully request that you reverse and remand. Thank you, counsel. Thank you to both counsel for your helpful arguments in this case. It's just arguments submitted for decision by the court.
judges: RAWLINSON, SMITH, Rakoff